UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

JOSHUA PAUL COX,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

Civ. No. 6:21-CV-065-H-BU
Cr. No. 6:20-CR-016-H-BU-1

### ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE, AND DENYING PETITIONER'S AMENDED SECTION 2255 MOTION

Before the Court are the Report and Recommendations of United States Magistrate Judge John R. Parker and the petitioner's objections. Civ. Dkt. Nos. 51; 54. The Report and Recommendations recommend denying both grounds of the petitioner's amended motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Civ. Dkt. No. 51 at 3. The petitioner objects to findings regarding his ineffective-assistance-of counsel-claim for failing to object on certain grounds to the distribution enhancement under USSG § 2G2.1(b)(3). Civ. Dkt. No. 54. Specifically, he argues that there was insufficient evidence to find that the images were sexually explicit, that the distribution was not relevant conduct, and that he was prejudiced by the failure to object. *Id.* at 6–28.

The Court overrules the petitioner's objections. Based on the information known to the petitioner's counsel, he was not constitutionally deficient by not raising these objections. In addition, the petitioner has not shown a reasonable probability of a different sentence had these objections been raised. Accordingly, the Court denies the petitioner's amended motion to vacate his sentence and dismisses this civil action with prejudice. Civ. Dkt. No. 23. The petitioner's original motion (Cr. Dkt. No. 55; Civ. Dkt. No. 1) is denied as moot.

1.      **Factual and Procedural Background**

     A.      **Cox's Conviction and Sentencing**

In 2021, the petitioner Joshua Cox pled guilty to Count One of a four-count indictment.  Cr. Dkt. Nos. 1; 35; 36.  Count One charged Cox with production of child pornography in violation of 18 U.S.C. § 2251(a).  Cr. Dkt. No. 1.  This charge, and the others in the indictment, stemmed from an extended online relationship between Cox and a minor female, Jane Doe.  Doe was 12 years old when she met Cox online.  Civ. Dkt. No. 14-1 at 3.  They communicated for several years over various social media platforms and by phone.  *Id.*

At some point, Doe began sending Cox numerous sexually explicit images and videos of herself at his request.  *Id.*; Cr. Dkt. No. 38-1 at 8–9.  Doe told investigators that once she started sending these images, "she could not stop it from continuing . . . because Cox would threaten to send the pictures out to everyone [she] knows."  Civ. Dkt. No. 14-1 at 3.  On at least one occasion, Cox carried out this threat and sent some of the images of Doe to another person, Doe's former boyfriend.  *Id.*  Doe learned that the images had been sent because the recipient informed her sister.  *Id.*  When agents searched Cox's phone, they located 658 images of Doe's "vagina, anus, and breast" as she "perform[ed] multiple sex acts," as well as 74 videos of Doe "removing her clothes and masturbating."  Cr. Dkt. No. 38-1 at 9–10.

The Presentence Investigation Report (PSR) prepared for Cox's sentencing applied a two-level adjustment under USSG § 2G2.1(b)(3) for distributing sexually explicit material.  *Id.* at 11.  In justifying the application of the enhancement, the PSR cited Cox's factual resume and stated that "the defendant admitted to sending the sexually explicit images of

[Doe] to a male that [Doe] was dating." *Id.* Regarding this distribution, Cox's factual resume stated:

> Doe did not remember when she began sending the sexually explicit photographs to Cox, but that once it started, she could not stop because Cox threatened to send the photographs to her family and friends. Cox sent nude images of Doe to a boy who lived across the street from Jane Doe 1 because Doe was dating him.

Cr. Dkt. No. 30 at 4. With this enhancement, Cox had a total offense level of 40 and his criminal history category was II, resulting in an advisory guidelines range of 324 to 360 months' imprisonment.[1] Cr. Dkt. No. 38-1 at 19.

In preparation for sentencing, Cox's sentencing counsel, Fred Brigman, filed several objections, including an objection to this distribution enhancement. Cr. Dkt. No. 43. Brigman argued that the distribution enhancement should not apply because Cox "sent the image of [Doe] to a male that [Doe] was dating, but he did not post it on a public website for public viewing." *Id.* at 1. At Cox's sentencing, the Court overruled this objection and sentenced him to 324 months' imprisonment. Cr. Dkt. No. 61 at 6, 14. Cox did not file a direct appeal.

## B. Postconviction Proceedings

### i. Cox's Motions to Vacate

Cox's original motion to vacate asserted one claim—ineffective assistance of counsel for failing to file an appeal. Cr. Dkt. No. 55 at 4; Civ. Dkt. No. 1 at 4. The government filed a response to Cox's motion that requested an evidentiary hearing on his claim. Civ. Dkt. No. 6. The Court then referred this matter to Magistrate Judge Parker for an

---

[1] Cox's guidelines range was capped at 360 months due to the statutory maximum sentence. Dkt. No. 38-1 at 19.

evidentiary hearing and to issue a report and recommendations.  Civ. Dkt. No. 7.  Counsel

was appointed for Cox.  Civ. Dkt. No. 8.

Cox's Section 2255 counsel filed the present amended motion to vacate, adding an

additional ineffective assistance of counsel claim.  Civ. Dkt. No. 23.  Specifically, the new

claim argues that Cox's sentencing counsel was ineffective for failing to challenge the

distribution enhancement on two additional bases: (1) that there was no evidence to show

that the distributed images contained sexually explicit conduct; and (2) that the distributed

images were not relevant conduct.  *Id.* at 7.  The government argues that this claim is

meritless.  Civ. Dkt. No. 31.

### ii.    Proceedings before the Magistrate Judge

Magistrate Judge Parker held an evidentiary hearing on Cox's amended motion on

August 17, 2022, where Cox and Brigman testified regarding Cox's claims.  *See* Civ. Dkt.

Nos. 46; 49.  Regarding his challenge to the distribution enhancement, Cox claimed that the

phone seized by the government did not contain the distributed images.  Civ. Dkt. No. 49 at

21.  He testified that he had destroyed the phone with the images at some point prior to his

arrest and no longer had the images.  *Id.* at 21, 39.  He further stated that Brigman had never

asked him about the content of the photos, what Doe was doing in the photos, or what parts

of her body could be seen.  *Id.* at 20, 33–34.  Cox claimed that the distributed image was "a

picture of her in her bra from the waist to her neck," despite having agreed to the factual

resume stating that Doe was nude in the images.  *Id.* at 37–39; Cr. Dkt. No. 30 at 4.  Cox

stated that he had sent the photos in November 2015.  Civ. Dkt. No. 49 at 20.

Brigman testified that he thought an objection to the distribution enhancement on

the basis that the images were not relevant conduct or did not contain sexually explicit

– 4 –

conduct would have been "frivolous." *Id.* at 81. He admitted that nothing in the defense file identified the distributed images or described the content of those specific images. *Id.* at 73–74. However, he noted that he had reviewed the images that the government had in its file and that he "didn't see anything that wasn't sexually explicit." *Id.* at 80–81. Brigman testified that he had no reason to believe that the distributed images "were any different than the 600 sexually explicit images [Cox] had on his phone." *Id.* at 80. He also noted that he could not remember if anything in the file had identified when the images were distributed. *Id.* at 73–74. Brigman further explained that he thought any objection to the distribution enhancement besides the one he made at Cox's sentencing would have risked losing the three-point reduction for acceptance of responsibility because it would have been seen as challenging the factual resume. *Id.* at 82, 90–93.

Following the evidentiary hearing, Judge Parker issued a Report and Recommendations (R&R), recommending that Cox's amended motion be dismissed. Civ. Dkt. No. 51. Regarding Cox's failure to appeal claim, the R&R found that Cox had failed to reasonably demonstrate his interest in appealing to Brigman. *Id.* at 73. In addition, it recommended finding that Cox lacked sufficient evidence to show that a rational defendant in his circumstances would have filed an appeal. *Id.* at 77–78.

As for Cox's claim that his counsel should have raised additional challenges to the Section 2G2.1(b)(3) enhancement, the R&R first rejected Cox's argument that it was unreasonable for his attorney to not object on the basis that the images were not sexually explicit. *Id.* at 25–32. The R&R found that Brigman's inference that the distributed images were sexually explicit was reasonable in light of the numerous sexually explicit images of Doe that had been found on Cox's phone. *Id.* at 29–30, 42–46. It noted that strong

– 5 –

circumstantial evidence supported finding that the images were sexually explicit. *Id.* at 28–31. Further, the R&R stated that "there is no reason to believe that, if challenged on this point, the [g]overnment could not have presented evidence of the images' sexually explicit nature either through the agent, through Jane Doe 1, through her sister (to whom the boyfriend showed the images), or through the boyfriend who received the images." *Id.* at 31.

In addition, the R&R found that the images constituted relevant conduct. *Id.* at 32–41. The R&R proposed two bases for finding that the images were relevant conduct. First, the images could be considered conduct by Cox in preparation for the offense: Cox obtained images of Doe due to his threats of sending the photos to her friends and family, and this act of distribution helped to coerce her to send more images under the continuous threat that he would send more if she stopped. *Id.* at 35–38. Second, the images were distributed during the course of the offense of Cox's conviction because Cox's sexual exploitation of Jane Doe was continuous for years after he first received explicit images from her. *Id.* at 38–41.

Finally, the R&R found that Cox had failed to show that he was prejudiced by any failure to object. *Id.* at 46–58. Specifically, the R&R determined that the Court at sentencing made clear that it was imposing Cox's sentence based on factors independent of the calculated guidelines range, namely, "the disturbing and repetitive nature of Cox's crimes." *Id.* at 52–54, 58.

### iii.    Cox's Objections

Cox's objections solely address the R&R's findings regarding the distribution enhancement and argue that the R&R errs on both prongs of the ineffective-assistance-of-

counsel test.  Civ. Dkt. No. 54.  He first contends that the evidence only supports a finding that the distributed images were nude, not sexually explicit, and without the images themselves, there is no reliable way that the Court could have determined whether the images were sexually explicit.  *Id.* at 8–15.  Accordingly, he argues, it was unreasonable for his attorney to not object on this ground, and the mere possibility that the government could have provided additional evidence to support its burden does not justify failing to object.  *Id.* at 7, 15–17.

Regarding the relevant-conduct findings, Cox asserts that the distribution was not "preparation for the *particular image* named in the indictment."  *Id.* at 19.  He contends that he needed to have these particular images in mind at the time he committed the distribution in order for it to count as "in preparation for" his offense of conviction, particularly given the amount of time between the distribution and the offense conduct.  *Id.* at 20–21.  As for the distribution occurring during the offense of conviction, he argues that "[t]he lengthy gap between the distribution and the acquisition of the indicted image makes it very unlikely that [he] intended to create that image when he undertook the distribution."  *Id.* at 21–22.

Finally, Cox contends that there is a reasonable probability that he would have received a different sentence had his counsel objected to the enhancement on either of these bases.  *Id.* at 23–28.  He notes that the Court did not say that it would have imposed the same sentence regardless of the guidelines range.  *Id.* at 26–27.  And he argues that the Court's explanation of the sentencing factors could have supported a lower sentence and that the Court's choice of the bottom end of the guidelines range suggests that a lower range could have resulted in a lower sentence.  *Id.* at 24, 26–28.

2.      **Legal Standards**

    A.      **Review of Magistrate Judge's Report and Recommendations**

When a party files objections to a magistrate judge's recommendations, the Court

must review those objected-to portions de novo.  *Kreimerman v. Casa Veerkamp, S.A. de C.V.*,

22 F.3d 634, 646 (5th Cir. 1994); 28 U.S.C. § 636(b)(1).  However, as for portions where no

specific objections are filed within the 14-day period, the Court reviews the Magistrate

Judge's report and recommendations only for plain error.  *See Douglass v. United Servs. Auto.

Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1); *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502

(5th Cir. 2020).

The District Court has reviewed the unobjected-to portions of the Report and

Recommendations for plain error.  Finding none, the Court accepts and adopts those

portions of the Report and Recommendations.

    B.      **Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel can be asserted in a Section 2255 motion

even if the petitioner did not raise that claim on direct appeal.  *Massaro v. United States*, 538

U.S. 500, 503–04 (2003).  To prevail on such a claim, the petitioner must demonstrate that

his "counsel's representation fell below an objective standard of reasonableness" and that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694

(1984).  In resolving an ineffective-assistance claim, the Court's review "must be highly

deferential" because "it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable." *Id.* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Defense counsel "has wide latitude in deciding how best to represent a client," which may include choosing to bring some arguments to the exclusion of others. *Yarborough v. Gentry*, 540 U.S. 1, 5–8 (2003). A mere challenge to the attorney's strategy or choice of certain theories does not establish ineffective assistance of counsel. *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007).

The Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. If counsel's decision was a "strategic choice[] made after thorough investigation of law and facts relevant to plausible options," that choice is "virtually unchallengeable." *Id.* Even if the investigation was "less than complete," counsel's decision is awarded great deference so long as the limitation on the investigation was reasonable. *Id.* at 691.

**3.     Analysis**

The Court overrules Cox's objections to the Report and Recommendations (Civ. Dkt. No. 54). Based on the information known to him at the time, Cox's counsel was not constitutionally deficient for failing to object to the distribution enhancement on the alternative bases raised by Cox in his amended Section 2255 motion. The PSR—combined with the factual resume and the extensive number of sexually explicit images of Doe that Cox possessed—permitted a reasonable inference that the distributed images were also sexually explicit. As a result, it was reasonable for Brigman to conclude that there was no

merit to objecting based on the content of the images.  In addition, the distribution was relevant conduct either as part of Cox's preparation for the offense or as occurring during the offense of conviction, and the information cited by Cox to dispute that conclusion was not known to Brigman at the time.  Finally, Cox has not shown a reasonable probability that he would have received a different sentence had Brigman raised these additional grounds for objecting to the distribution enhancement.

### A.   Cox's counsel was not ineffective for failing to object to the enhancement on the basis that the images were not sexually explicit.

The Court overrules Cox's objections that his sentencing counsel was ineffective for failing to object to the distribution enhancement on the basis that the distributed images were not sexually explicit.  The evidence provided ample reason to infer that the distributed images were sexually explicit, and nothing known to Brigman at the time gave him a basis to refute that inference.  Under such circumstances, it was not unreasonable for Brigman to not object on this basis.

Cox's central contention is that, without actual knowledge of the content of the images besides that Doe was nude, Brigman should have objected to the enhancement.  *See* Civ. Dkt. No. 54 at 8–17.  As Cox notes, for the distribution enhancement to apply, the content must have been sexually explicit conduct as defined in 18 U.S.C. § 2256(2).  *See* USSG § 2G2.1 cmt. 1.  As relevant here, Section 2256(2) defines "sexually explicit conduct" as "lascivious exhibition of the anus, genitals, or pubic area of any person."  18 U.S.C. § 2256(2)(A)(v).  Mere nudity is insufficient to qualify as sexually explicit conduct.  *United States v. Steen*, 634 F.3d 822, 826–28 (5th Cir. 2011).  Accordingly, Cox asserts that the factual resume, which noted that the images were of Doe nude, was an insufficient basis for the PSR to apply the enhancement.  Civ. Dkt. No. 54 at 8–15.

– 10 –

However, the context of that statement in the factual resume combined with the significant number of sexually explicit images and videos that Cox had of Doe created a reasonable inference that the distributed images were also sexually explicit. A "district court may adopt facts contained in a PSR without inquiry, so long as the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). Additionally, "in determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts." *Id.* The evidence here permitted such an inference that the distributed images were sexually explicit. The factual resume states that Doe sent sexually explicit images to Cox and continued to do so because he threatened to send those images to her friends and family. Cr. Dkt. No. 30 at 4. The admission is immediately followed by the statement that Cox sent nude images of Doe to another person. *Id.* In addition, Cox agreed that a search of his phone revealed 658 images and 74 videos of Doe engaged in sexually explicit conduct that satisfied the definition of child pornography. *Id.* at 3. Given the extensive number of sexually explicit photos that Cox had of Doe and his threats to distribute such photos, the Court could reasonably infer that the nude images of Doe that Cox distributed were also sexually explicit. Accordingly, Brigman reasonably concluded that the Court would make such an inference if he had objected on the basis that the images were not sexually explicit and that, as a result, any such objection would fail.

Cox argues that this extrapolation of the content of the distributed images from his collection of photos lacks sufficient reliability to have justified the enhancement, particularly in light of Cox's testimony at the hearing that he distributed these images years before his arrest. Civ. Dkt. No. 54 at 13–15. But the underlying facts that permit the inference are

clearly reliable as they were admitted by Cox himself: (1) he had 658 images and 74 videos of Doe engaged in sexually explicit conduct; (2) he obtained these images and videos by threatening that he would distribute the images if she stopped; and (3) he carried out this threat on at least one occasion by distributing nude images of Doe to a boy she dated.  Cr. Dkt. No. 30 at 3–4.  The volume of sexually explicit images in this case combined with Cox's threats to distribute them permit the reasonable inference that the distributed images were sexually explicit.  While Doe stated that she also sent non-nude images to Cox such that not all images he had of her were sexually explicit, *see* Civ. Dkt. No. 14-1 at 4, he admitted that the distributed images themselves were nude and that he obtained images as part of this coercion, Cr. Dkt. No. 30 at 4.  Even if it is possible that the images were not sexually explicit, sentencing facts need only be established by a preponderance of the evidence.  *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012).  It was not unreasonable for Brigman to determine that the mere speculative possibility that, despite coercing sexually explicit images from Doe based on threats of distributing such images, Cox instead distributed merely nude images would not outweigh the strong circumstantial evidence that he distributed sexually explicit images.

    And it was not unreasonable under these circumstances to be concerned, as Brigman was, that an objection to the content of the images might be viewed as denying responsibility for the offense.  *See* Civ. Dkt. No. 49 at 81–82.  If a defendant "falsely denies, or frivolously contests, relevant conduct that the court determines to be true," he "has acted in a manner inconsistent with acceptance of responsibility."  USSG § 3E1.1 cmt. 1(A). Disputing statements in the factual resume can cause a defendant to lose acceptance of responsibility.  *See United States v. Addison*, 714 F. App'x 477, 477 (5th Cir. 2018).  The

– 12 –

burden at sentencing would have been on Cox to provide rebuttal evidence to counter the reasonable inference from the PSR's facts. *See Caldwell*, 448 F.3d at 290–91. To do so, Cox would have needed to show "that those facts are 'materially untrue, inaccurate or unreliable.'" *Harris*, 702 F.3d at 230 (quoting *United States v. Huerta*, 182 F.3d 361, 364–65 (5th Cir. 1999)). And mere objections are insufficient—a defendant must provide "testimony or other evidence." *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010). Since Cox claims that the images in question was not among those seized, it appears that his only rebuttal evidence could have been his own testimony as to the content of the images. *See* Civ. Dkt. No. 49 at 20–21, 39. Based on his testimony at the evidentiary hearing, he would have argued that images were not sexually explicit because it was "a picture of [Doe] in her bra from the waist to her neck." *Id.* at 39. However, had Cox argued that the distributed images were not actually nude as he claimed at the evidentiary hearing,[2] he would have been disputing conduct he previously testified under oath that he committed. *See id.*; Cr. Dkt. Nos. 30 at 4; 60 at 10.

It was not unreasonable for Brigman to be concerned about the possible consequences of offering such contradictory testimony. Had he brought this objection and lost the three-point reduction for acceptance of responsibility, Cox's offense level would have been 43 and his advisory guidelines range would have been life imprisonment, reduced to 360 months due to the statutory maximum. *See* Cr. Dkt. No. 38-1 at 11–13, 19. Even if this outcome was uncertain, Brigman's strategic choice to not take this risk was not

---

[2] To the extent Cox argues that his definition of "nude" would also cover the content of the images he claims he distributed, *see* Civ. Dkt. No. 49 at 39, this is belied by other portions of his testimony at the evidentiary hearing where he stated that he understood "nude" to mean images of "her completely undressed." Civ. Dkt. No. 49 at 20.

unreasonable. And if he had tried to object without any rebuttal evidence, the objection was unlikely to succeed.

Finally, based on the evidence known to Brigman at the time, it was reasonable to not object because he had no reason to believe that the images were not sexually explicit. He had reviewed the images obtained by the government and testified that every single one he viewed was sexually explicit. Civ. Dkt. No. 49 at 80–81. Cox admitted that he told Brigman that the factual resume was true. *Id.* at 38. He further testified that he did not tell Brigman that he had sent the photos years earlier or that it was an image of Doe in her bra from the waist to the neck. *Id.* at 37–39. Accordingly, at the time of sentencing, Brigman knew all the facts in the factual resume that provided a reasonable inference that the distributed images were sexually explicit. He further knew that all the images he had seen were sexually explicit, further strengthening that inference. But he did not know any of Cox's current claims about the images that might have rebutted that inference.

Judging Brigman's strategic choice based on the information available to him at the time, as the Court must, it cannot conclude that he acted unreasonably by not bringing this objection or by not inquiring further into the content of the image. *See Strickland*, 466 U.S. at 690–91. Brigman had looked at numerous sexually explicit images possessed by Cox. Cox had admitted to possessing over 600 sexually explicit images of Doe. And Cox had not provided him with any information to dispute that the distributed images were sexually explicit. Under these circumstances, it was not unreasonable to conclude that the distributed images were most likely also sexually explicit. Even if Cox had told him that the images were of Doe in a bra, Brigman would have been faced with Cox's earlier statements about the content of the images that contradicted that claim. Any objection would have had

to surmount Cox's previous sworn testimony that the factual resume was accurate, likely undermining any credibility of his claim about what the images depicted and risking a loss of acceptance of responsibility.

Under these circumstances, Cox has not surmounted the strong presumption that Brigman's "conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, Cox has not shown that Brigman was constitutionally deficient by not objecting to the distribution enhancement on the basis that the image was not sexually explicit.

### B. Cox's counsel was not ineffective for failing to object to the enhancement on the basis that the distribution was not relevant conduct.

Cox's second basis for ineffective assistance of counsel suffers from similar problems. Cox's claim turns on the asserted temporal distance between when he distributed the images and the date of the offense conduct. However, Cox himself testified that he never told Brigman that he had distributed the images years before the production of the image for which he was convicted. Civ. Dkt. No. 49 at 38. Instead, Brigman knew that over several years, Cox had engaged in the same pattern of demanding sexually explicit images from Doe by threatening to distribute the images if she stopped and that he had at some point actually distributed some images. *See* Cr. Dkt. No. 30 at 3–4. Based on these facts, Brigman reasonably concluded that any objection that the distribution was not relevant conduct would likely fail.

Under the sentencing guidelines, a court must consider all relevant conduct in determining a defendant's proper offense level. USSG § 1B1.3. Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of

– 15 –

the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1).  The R&R found that the distribution at issue could constitute relevant conduct because it occurred either "during the commission of the offense of conviction" or "in preparation for that offense."  Civ. Dkt. No. 51 at 34–35.  Cox disputes both findings based on his testimony at the evidentiary hearing that the images were sent years before the offense of conviction.  Civ. Dkt. No. 54 at 19–23.

The sequence of events at issue can support a finding that an act is relevant conduct. *See United States v. McGavitt*, 28 F.4th 571, 578 (5th Cir. 2022).  For example, in *McGavitt*, a defendant's sexual intercourse with the victim was relevant conduct, either "during the commission of" or "in preparation for" the offense of conviction, when "he demanded that [the victim] continue sending him explicit images of herself after he had intercourse with her."  *Id.*  Similarly here, Cox's distribution of the images of Doe occurred alongside his continuous threats that if she did not provide him with additional sexually explicit images, he would distribute her photos.  Cr. Dkt. No. 30 at 4.  By distributing the image, Cox ensured that Doe knew his threats were legitimate and that she would continue to send him more images.  Cox himself stipulated in the factual resume that Doe "could not stop because Cox threatened to send the photographs to her family and friends."  *Id.*  And this statement immediately preceded his admission that he carried out this threat on at least one occasion.  *Id.*

The nexus between Cox's threats, his act of distribution, and his continued receipt of the photos from Doe further supports concluding that the distribution was relevant conduct. Cox compares his case to *United States v. Yerena-Magana*, where the Fifth Circuit found that a

defendant's illegal entry into the country was not relevant conduct for a drug offense.  478 F.3d 683, 689–90 (5th Cir. 2007).  There, the Fifth Circuit noted that there was no evidence that the defendant had "intended to commit the drug offense for which he was sentenced at the time he illegally entered the United States" even though the illegal entry had occurred one month prior to the drug offense.  *Id.* at 689.  The entry was not relevant because it was a "'discrete, noncontinuing offense . . . completed prior to' the drug offense, which harmed different societal interests."  *Id.* (quoting *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005)).  But here, Cox admitted in his factual resume that he had threatened Doe with distribution in order to obtain more images, permitting the reasonable inference that his actual distribution was intended to ensure that Doe knew his threats were legitimate.  *See* Cr. Dkt. No. 30 at 4.  Cox's exploitation of Doe was a continuing offense, and his distribution of her images to another person formed part of this conduct.  And this activity harms the same societal interest.  There is no attenuation between Cox's distribution of Doe's images from his coerced production of those images based on his repeated threats to distribute even if he had distributed the images years earlier.  *See id.*  It was not unreasonable for Brigman to conclude that the Court would determine that this connection between the production of the images due to Cox's threats and his act of carrying out such a threat was sufficient to constitute relevant conduct.

Moreover, Brigman did not know of this alleged temporal distance.  Cox admitted that he never told Brigman when he distributed the images.  Civ. Dkt. No. 49 at 38.  So, at the time, Brigman had no basis to contest that the distribution was relevant conduct.  Instead, he knew that Cox had engaged in a lengthy relationship with Doe where he continually coerced her to provide sexually explicit images—including the one named in the

indictment—by threatening to distribute her images if she stopped.  Under the circumstances, it was reasonable to believe that Cox's distribution on one occasion was an effort to ensure that Doe would send him more images by demonstrating that his threats were real and was part of Cox's continuous exploitation of Doe over several years.  No information known to Brigman suggested that the distribution was not in preparation for the offense or committed during the offense.

        Under these circumstances, it was not unreasonable for Brigman to decide that it was better to object to the distribution enhancement on the basis that Cox's act was not distribution rather than that it was not relevant conduct.  Brigman had no real evidence with which to rebut the reasonable inference that the distribution conduct included in the factual resume was relevant conduct.  Any argument as to relevant conduct would have confronted the substantial problem that Cox's distribution was the fulfillment of the threat to distribute that he used to compel Doe to continue to send him sexually explicit images and was therefore closely linked to his offense of conviction.  Confronted with these issues, Brigman chose the argument he believed would have the greatest chance of success in avoiding the application of the distribution enhancement.  *See id.* at 81–82, 89–90, 92–93.  Cox has not demonstrated that Brigman's actions were constitutionally deficient rather than simply strategic choices that were ultimately unsuccessful.  Cox's preference for alternative arguments challenging the distribution enhancement, with the benefit of hindsight and information not known to Brigman, is insufficient to show ineffective assistance of counsel. *See Strickland*, 466 U.S. at 689–91; *Yarborough*, 540 U.S. at 5–8.

**C.     Cox has not demonstrated a reasonable probability that he would have received a different sentence had his attorney objected on these alternative grounds.**

Finally, even if Cox had shown that Brigman was ineffective, his claim would nevertheless fail because he has not demonstrated that he was prejudiced.  For the reasons already stated by the Court, any objection was unlikely to succeed.  As a result, Cox was not prejudiced by Brigman's failure to make such objections because they would not have changed his guidelines range.  In addition, the Court's explanation of its decision to impose a sentence of 324 months of imprisonment was based on factors independent of the particular guidelines range.  The Court noted that the sentence was proper based on its consideration of the sentencing factors of 18 U.S.C. § 3553(a), particularly the egregious offense conduct.

Prejudice requires demonstrating a reasonable probability that the defendant would have received a different sentence had the objections been made.  *See Strickland*, 466 U.S. at 694.  Often, "a defendant can rely on the application of an incorrect [g]uidelines range to show an effect on his substantial rights."  *Molina-Martinez v. United States*, 578 U.S. 189, 203 (2016).  But if the explanation of the sentence "make[s] it clear that the judge based the sentence he or she selected on factors independent of the [g]uidelines," a defendant cannot show prejudice based on an alleged miscalculation of the guidelines.  *Id.* at 200–01.  A court must express a clear intent to impose the same sentence regardless of the guidelines error but need not use any "magic words."  *United States v. Shepherd*, 848 F.3d 425, 427 (5th Cir. 2017).  In considering the stated reasons for the sentence, the Court must ask "[w]hat was driving *this* judge's decision to impose *this* sentence for *this* defendant."  *United States v. Sanchez-Hernandez*, 931 F.3d 408, 411 (5th Cir. 2019).

– 19 –

Here, the Court gave a detailed explanation of why it selected the sentence imposed that demonstrates that Cox's offense conduct and his threat to the safety of others drove the sentence, not the advisory guidelines range:

> THE COURT:  I am required by statute to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 3553(a)(2) and to consider all factors of Section 3553(a), which I have done.
>
> Mr. Cox, all that means is I consider certain guideposts in trying to figure out what is a reasonable sentence.  One of those guideposts is the nature and circumstances of the offense, or what did you do.
>
> Mr. Haag talked briefly about that.  This is an incredibly concerning offense.  It's an incredibly disturbing offense.  You're here before the Court for coercing and inducing the production of several sexually explicit images and videos from a 16-year-old minor.  In total, you possessed 658 images and 74 videos of the minor.  You manipulated her, you threatened her, you even distributed one of her images to another individual that she knew.
>
> You also engaged in an [inappropriate] sexual relationship with another minor victim, and you likewise, induced her to produce sexually explicit images.  You are considered by me to be a repeat and dangerous sex offender against minors.  It's incredibly serious conduct.  Your conduct has undoubtedly caused immeasurable damage to your victims and their families.
>
> Of particular concern is what Mr. Haag pointed out, which is that you were contacted by the police, you were told to cut it out, you had an opportunity to go "What was I thinking?  What in the world was I doing?"  And you doubled down.
>
> The scope of your conduct is very concerning to me, the consistency and just dogged determination of your conduct and your manipulation and your threats of these victims is very concerning to me, and the fact that there are multiple victims here is concerning.  And finally, that you are an actual contact offender.  I can't ignore all of that.
>
> I also look, as another guidepost, at your history and your characteristics.  You are young.  Are you still 22 years old?
>
> THE DEFENDANT: Yeah.
>
> THE COURT:  You do have some criminal history, which includes some violence—juvenile adjudication for criminal mischief, and prior adult conviction for assault causing bodily injury of a family member.  The history

of violence against women is particularly concerning to me in light of this offense, and I do find the PSR makes that clear and establishes that.

I have considered the remaining factors as well, which are the need to reflect the seriousness of the offense—and it doesn't get much more serious than this— to promote respect for the law, provide a just punishment, afford adequate deterrence, and protect the public from further crimes.

Mr. Brigman, I understand your argument that "For goodness' sake, do we really need this much time to cause somebody to make a change?" You know, if causing someone to make a change were the only consideration that Congress told me to look to, I would agree with you. I sure hope not. I would hope that we don't need that much time.

But that's not the only consideration that I am required to consider. I consider all of the factors and all those are completely independent of whether he can make a change or not. That's not all this is about. It's about much more than that and I can't ignore that.

So after consideration of all of those factors, the purposes of sentencing, and the parties' arguments, I have considered your request for a downward variance. I can understand it in this case given the age of your client and the length of the advisory range. I do recognize that it's purely advisory and I could downwardly vary if I thought it were appropriate.

Given all of the 3553(a) factors that I have discussed today, I don't think it would be. I have determined that a sentence of 324 months is sufficient but not greater than necessary.

Cr. Dkt. No. 61 at 11–14. Importantly, although the Court mentioned the guidelines, it did so solely in addressing Brigman's motion for a downward variance. *See id.*

While Cox argues that it is "numerically unlikely" that he would have received a sentence of 324 months if it had not been the bottom of his advisory guidelines range, *see* Civ. Dkt. No. 54 at 27–28, the Fifth Circuit has found similar explanations to be sufficient to show that the sentence was based on factors independent of the guidelines. In *United States v. Nino-Carreon*, the Fifth Circuit found there was no reasonable probability of a different sentence where the district court gave a "comprehensive recitation" of the defendant's criminal history and concluded that the imposed sentence was necessary to

satisfy the sentencing factors.  910 F.3d 194, 197 (5th Cir. 2018).  A court's discussion of the seriousness of the offense, the defendant's criminal history, and the "need to give a sentence that deters the criminal conduct of the defendant and to protect the public" was also a sufficient explanation of factors independent of the guidelines.  *United States v. Johnson*, 943 F.3d 735, 738 (5th Cir. 2019).  Similarly, in *United States v. Torres*, the district court's "clear account of its reasoning" based on the seriousness of the offense and the defendant's recidivism demonstrated that the sentence was based on factors besides the guidelines.  858 F. App'x 727, 729–30 (5th Cir. 2021).  And a court's reference to the guidelines range or a variance is not sufficient to "overrid[e] the court's consideration of independent factors in its sentencing decision."  *United States v. Garcia Miguel*, 829 F. App'x 36, 39–40 (5th Cir. 2020). Like in those cases, the Court's detailed discussion of the Section 3553(a) factors independent of the guidelines demonstrates that there is no reasonable probability that Cox would have received a different sentence had his attorney brought these additional objections.

     This is especially apparent given the facts and circumstances involved.  Even if Cox sent an image of the victim in her underwear that was not sexually explicit, it would still be an aggravating factor.  Cox sent, at the very least, a private, intimate photograph of her to her former boyfriend, and he did so as a demonstration of his power over her and his willingness to carry out his threats.  He did this, of course, to ensure that his sexual exploitation of his victim would continue.  Given this deplorable conduct, any technical objection to the distribution enhancement would not have changed the sentence imposed.

     Accordingly, the Court's explanation of Cox's sentence demonstrated that factors independent of the guidelines—namely, the seriousness of his offense conduct along with

the other Section 3553(a) factors—were the basis for its imposition of a sentence of 324 months.  Cox therefore has not shown a reasonable probability that he would have received a different sentence had Brigman objected to the distribution enhancement based on relevant conduct or the images' content.

### 4.    Conclusion and Denial of Certificate of Appealability

Cox has not shown any deficient performance by his counsel for not objecting to the Section 2G2.1(b)(3) enhancement on grounds other than those raised at the sentencing hearing, and he was not prejudiced by the failure to object.  The Court therefore overrules his objections and adopts the Report and Recommendations (Civ. Dkt. No. 51) as the finding of the Court.  The Court denies Cox's amended motion to vacate his sentence.  Civ. Dkt. No. 23.  Cox's original motion (Cr. Dkt. No. 55; Civ. Dkt. No. 1) is denied as moot.

Additionally, considering the record and relevant authorities in this case, the Court denies a certificate of appealability under Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Court, and 28 U.S.C. § 2253(c).  As explained above, the petitioner has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

So ordered on December 4, 2023.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE